1   PAUL J. LEEDS, ESQ. (Bar No. 214309)
    leedsp@higgslaw.com
2   MAGGIE E. SCHROEDTER, ESQ. (Bar No. 270377)
    schroedterm@higgslaw.com
3   HIGGS, FLETCHER & MACK LLP
    401 West A Street, Suite 2600
4   San Diego, CA 92101-7913
    TEL:   619.236.1551
5   FAX:   619.696.1410
6
7   Attorneys for Debtors
    Christopher John Hamilton and Elizabeth Leigh Tesolin
8

9                   UNITED STATES BANKRUPTCY COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  In re | Chapter 11 |
| 13  Christopher John Hamilton and | Case No. 14-03142-CL11 |
| 14  Elizabeth Leigh Tesolin | **MEMORANDUM IN SUPPORT OF** |
| 15            Debtors. | **DEBTORS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| 16 | **AND CROSS-MOTION FOR SUMMARY JUDGMENT** |
| 17 | |
| 18  Elite Of Los Angeles, Inc. and San Diego Testing Services, Inc. | Adv. Proceeding No.14-90152-CL |
| 19 | DATE:          9/24/15 |
| 20            Plaintiffs | TIME:          2:00 P.M. |
| | DEPT:          5 |
| 21  vs. | ROOM:          318 |
| | JUDGE:        Hon.  Christopher B. Latham |
| 22  Christopher John Hamilton and Elizabeth Leigh Tesolin | |
| 23            Defendants. | |
| 24 | |

25          Debtors and Defendants Christopher John Hamilton and Elizabeth Leigh Tesolin

26   ("Debtors"), pursuant to Fed. R. Civ. P. 56, submit the following Memorandum in Support

27   of their Combined Opposition to Plaintiffs Elite of Lost Angeles, Inc. and San Diego

28

HIGGS, FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1

Case No. 14-03142-CL11
Adv. Proceeding No. 14-90152-CL
Memorandum

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION                                                                 2

II.  STATEMENT OF MATERIAL FACTS                                                 3

III.  THE STANDARD FOR SUMMARY JUDGMENT                                          6

IV.  SUMMARY OF ARGUMENT                                                         6

V.  ARGUMENT                                                                     7

A.  Debts arising from recklessly or negligently inflicted injuries are not
    exempt from discharge under 11 U.S.C. § 523(a)(6).                           7

B.  Because the jury allocated damages between the unintentional claims
    and the intentional claims, the portion allocated to the unintentional
    claims is dischargeable under *Geiger*                                       9

    1.  Under California law, breach of fiduciary duty and breach of the
        duty of loyalty are unintentional torts.                                 9

    2.  The punitive damages award cannot form the basis for a finding
        of nondischargeability as to unintentional torts.                        11

        a.  The finding fails to establish willful injury.                       11

        b.  The finding fails to identify the conduct or damages upon
            which it was based.                                                   12

        c.  A finding for punitive damages by itself cannot establish
            malice under 523(a)(6), because the California test is
            disjunctive.                                                          13

    3.  Because the jury considered all of the damages and allocated a
        certain amount of damage arising from the unintentional torts, that
        debt is dischargeable under *Geiger*.                                     15

C.  The intentional claims are either nondischargeable, or require trial as to
    intent.                                                                       16

    1.  Debtors do not dispute that the debt arising from intentional
        interference with prospective economic advantage is
        nondischargeable.                                                         16

    2.  The claims for misappropriation of trade secrets lack any finding
        regarding intent and thus issue preclusion is improper.                   16

i

1

**TABLE OF CONTENTS**

2

3                                                                                    **PAGE**

4      3.    The aiding and abetting liability allocated to the unintentional
             torts is dischargeable.                                                      17

5      4.    Attorneys' fees and costs attributed to the unintentional torts
6            are dischargeable.                                                            17

7   V. CONCLUSION                                                                          18

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

3
                                                                      **PAGE**
4
**Cases**

5    *American Airlines, Inc. v. Sheppard Mullin, Richter & Hampton*          6
          (2002) 96 Cal.App.4th 1017
6

7    *Barboza v. New Form, Inc.*
          545 F.3d 702 (9th Cir. 2008)                                      3, 5
8
     *Bass v. Beacon Talent Agency, Inc. (In re Bass)*
9          Case no. CV 13-07707-JVS, 2014 U.S. Dist. LEXIS 100708,
           *10-11 (C.D. Cal. July 22, 2014)                                  6
10
     *Brandstetter v. Derebery*
11         324 B.R. 349 (Bankr.C.D.Cal. 2005)                                10
12
     *Britton*
13         950 F.2d 602 (9th Cir. 1991)                                      4

14   *Carrillo v. Su*
           290 F.3d 1140 (9th Cir. 2002)                                     5
15

16   *Jett v. Sicroff*
           401 F.3d 1101(9th Cir. 2005)                                    5, 9, 10
17
     *Grogan v. Garner*
18         498 U.S. 279 (1991)

19   *Hawkins v. Franchise Tax Board*                                        3
           Case no. 3:10-cv-02026-JSW, 2014 U.S. App.
20         LEXIS 17925, at *11
21
     *Impulsoria del Territorio Sur S.A. v. Cecchini*
22         780 F.2d 1440 (9th Cir. 1986)                                     4
23
     *Jackson v. California Franchise Tax Board*
24         184 F.3d 1046 (9th Cir. 1999)                                     3
25
     *Kawaauhau v. Geiger*
26         523 U.S. 57 (1998)                                                4

27

28

iii

1

## TABLE OF AUTHORITIES (Cont'd)

2

3

**PAGE**

*Krishnamurthy*
    209 B.R. 714 (9th Cir.B.A.P.1997)                                        10

*Lackner v. North*
    (2006) 135 Cal.App.4th 1188                                              5

Landmark Home Mortg., Inc. v. Gonzales (In re Gonzales)
    2014 Bankr. LEXIS 1394, *11-12 (Bankr. N.D. Cal. Apr. 3, 2014)          10

*Lucido v. Super. Ct.*
    (1990) 51 Cal.3d 335                                                     2

*Oasis W. Realty, LLC v. Goldman*
    (2011) 51 Cal.4th 811                                                    5

*Plyam v. Precision Dev., LLC*
    530 B.R. 456 (Bankr.9th Cir. 2015)                              *Passim*

*Shahverdi v. William Hablinski Architecture* (In re Shahverdi)
    BAP No. CC-12-1287-MkTaPa, 2013 Bankr. LEXIS 4195, at *1, 4             6

## Statutes

    11 U.S.C. § 523(a)(6)                                            Passim

## Rules

    Fed. R. Civ. P. 56(a)                                                   1

1   Testing Services' (collectively, "Elite") Motion for Summary Judgment [Doc. No. 26] and

2   Cross-Motion for Summary Judgment.

3                                            I.

4                                  **INTRODUCTION**

5          One of the fundamental purposes of the Bankruptcy Code is to give a debtor a

6   fresh start.  Exceptions to discharge are therefore interpreted narrowly.  Section

7   523(a)(6) of the Bankruptcy Code exempts from discharge debt for "willful and malicious"

8   injury by the debtor. For purposes of section 523(a)(6), the Supreme Court in

9   *Kawaauhau v. Geiger*[1] held that "nondischargeability takes a deliberate or intentional

10  *injury*, not merely a deliberate or intentional *act* that leads to injury" – in other words,

11  debts arising from intentional torts. Debts arising from recklessly or negligently inflicted

12  injuries, such as those arising from unintentional torts, are dischargeable.

13         Here, in the state court matter of *Elite of Los Angeles v. Summa Consulting, LLC,*

14  *et al.,* a judgment was entered in favor of Elite and against Debtors for four causes of

15  action relevant here: breach of fiduciary duty, breach of the duty of loyalty, intentional

16  interference with economic advantage, and misappropriation of trade secrets.  Elite

17  sought $7.7 million in compensatory and $500,000 in punitive damages.  The jury

18  awarded $2,070,000 in compensatory damages and $50,000 in punitive damages

19  against Christopher Hamilton, and found Elizabeth Tesolin jointly liable for some, but not

20  all of the claims.  The jury, in a detailed special verdict form, specifically allocated

21  damages among the four claims, specifying the exact damage caused by *the specific*

22  *conduct* corresponding to the respective claims.

23         Ignoring *Geiger,* and ignoring the jury's findings with respect to the specific

24  claims, Elite asserts that the entire award is nondischargeable.  Elite's contention is

25  without merit for several reasons: (1) Elite's *entire* argument is premised upon an

26  obsolete standard for the exception to discharge under section 523(a)(6) which was

27

28  [1] 523 U.S. 57, 61 (1998)

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1                                    2                    Case No. 14-03142-CL11
                                                                  Adv. Proceeding No. 14-90152-CL
                                                                  Memorandum

1    effectively overruled by *Geiger*; (2) Elite's contention that the breach of fiduciary duty and

2    breach of duty of loyalty claims are intentional is not supported by *any* authority, and is

3    incorrect under California law; and (3) because the punitive damages award was *not*

4    allocated to any specific conduct, it does not operate to except from discharge the entire

5    judgment.

6        Debtors respectfully request that the Bankruptcy Court grant summary judgment

7    according to the special verdict, and deny Elite's motion for summary judgment to the

8    extent it seeks to except from discharge the damages arising form claims without the

9    necessary scienter findings.

10                                        II.

11                        **STATEMENT OF MATERIAL FACTS**

12        Elite of Los Angeles, Inc. ("Elite") is a college prep testing service; it prepares

13    students to take standardized college tests (SAT and ACT). (Separate Statement of

14    Undisputed Material Facts ("SS") 9.) Hamilton, with two others, formed San Diego

15    Testing Services ("SDTS") as the San Diego office of Elite. (SS 10.)

16        After a couple of years, Chris was unhappy with the way the company was run.

17    (SS 11.) He retained counsel at the law firm of Jeffer, Mangels and Butler to advise him

18    on moving away from Elite. (SS 11-12.) He ultimately left Elite to form another

19    company, Summa Consulting, LLC, of which he was the 100% owner. (SS 13.)

20        On November 18, 2011, Elite and SDTS filed a complaint in San Diego Superior

21    Court, case no. 37-2011-101324, alleging causes of action against Chris, Elizabeth,

22    Summa, and others- Karl Hagen, Andrew Chung, Jennifer Suh and Deborah Kang- for:

23    (1) breach of fiduciary duty; (2) breach of the duty of loyalty; (3) intentional interference

24    with prospective economic advantage; (4) trade secret misappropriation; (5) unfair

25    competition; (6) aiding and abetting; and (7) violation of Penal Code section 502. (The

26    case is hereafter referred to the "State Court Action"). (*See* Elite's Request for Judicial

27    Notice, Exhibit A; SS 15.) Elite sought $7,700,000 in damages against all defendants,

28    plus $500,000 in punitive damages against Chris. (SS 16-17.)

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1                                        3                        Case No. 14-03142-CL11
                                                                          Adv. Proceeding No. 14-90152-CL
                                                                          Memorandum

1    The case went to a jury trial during April 2013. (SS 18.) The unfair competition

2    claim did not go to the jury.   Ultimately, the jury returned a special verdict, finding that

3    Hamilton liable for (1) breach of fiduciary duty, (2) breach of his duty of loyalty, (3)

4    Intentional interference with prospective economic advantage, and (4) misappropriation

5    of trade secrets. (SS 19-20.) The jury did not find Chris liable for the Section 502

6    claims. (SS 21.) The special verdict found Elizabeth jointly liable for some, but not all, of

7    the same claims.[2] (SS 26-29.)

8    The special verdict specifically then specifically allocated the damages caused by

9    the respective actions as follows:

| Hamilton | SDTS | Elite |
|---|---|---|
| Breach of Fiduciary Duty | $1,000,000 | $10,000 |
| Breach of Duty of Loyalty | $500,000 | $10,000 |
| Intentional Interference | $150,000 | |
| Misappropriation of Trade Secrets | $150,000 | $200,000 |
| Punitive Damages | $50,000 | |
| | | |
| **Tesolin (Joint and Several)** | **SDTS** | **Elite** |
| Breach of Fiduciary Duty | $1,000,000 | $10,000 |
| Breach of Duty of Loyalty | $500,000 | |
| Intentional Interference with Econ | $150,000 | $10,000 |
| Misappropriation of Trade Secrets | $150,000 | $10,000 |

22    (SS 22-29). On August 23, 2013, the Superior Court entered judgment according to the

23    jury's findings (the "Judgment"). (SS 30.)

24    The Court also entered judgment against Summa, and in favor of Elite, in the

25    amount of $1,000,000. (SS 31.) During November 2013, Summa recapitalized in order

26    to raise the capital needed to post a supersedeas bond, and continue to operate. (SS

---

[2] The verdict against other individuals are described in the Special Verdict form, but are not material here.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1                                        4                    Case No. 14-03142-CL11
Adv. Proceeding No. 14-90152-CL
Memorandum

1    32.)  Both Summa and Chris appealed the Judgment.  (SS 33.)  Summa ultimately

2    settled with Elite.  (SS 34.)

3         During November 2013, Elite began aggressive collection activity against Chris

4    and Elizabeth.  (SS 35.)  Elite levied their bank and retirement accounts.  (SS 36.)  Chris

5    and Elizabeth submitted to debtors' examinations, and provided extensive

6    documentation to Elite regarding their property and finances during January and

7    February 2014.  (SS 37.)  At the end of February 2014, the new majority owners of

8    Summa fabricated allegations against Hamilton, and terminated his employment at

9    Summa.  (SS 38.)  During March 2014, Hamilton filed suit in state court against Summa

10   and its new owners.  (SS 39.)

11        Elite then levied on Hamilton's stock in San Diego Testing Services. (SS 40.)  On

12   April 24, 2014, on order to prevent the sale, and to propose a plan to pay their creditors,

13   Debtors filed a petition under Chapter 11 of the Bankruptcy Code.  [Case no. 14-03142-

14   CL11, Doc. No. 1.]  (SS 41.)[3]

15        Christopher Hamilton and Elizabeth Tesolin have maintained throughout the

16   litigation that their sole purpose was to separate from Elite in light of disagreements over

17   the business, and to move on.  (Declaration of Christopher Hamilton ("Hamilton Decl.") ,

18   at ¶ 12; Declaration of Elizabeth Tesolin ("Tesolin Decl."), at ¶ 3.)  They hired counsel in

19   order to avoid the very problems that became the center of the verdict against them.

20   (Id.; SS 12.)  Both deny that they ever had any purpose or intent of harming Elite or

21   SDTS.  (Hamilton Decl., at ¶ 12; Tesolin Decl., at ¶ 3.)  While the process of the trial,

22   and the jury's findings have been painful and humiliating, they filed this case with the

23   purpose of acknowledging the existence of the findings- which they still dispute- and

24

25   [3] In Section I (A) of its Memorandum, Elite offers a rendering of what Elite claims to be the "facts," but does
     not support its narrative with reference to undisputed facts, evidence, or findings of the jury.  [Doc. No. 26-
26   1, p. 3-5:1-15.]  Nothing set forth in Section I(A) is contained in Elite's separate statement. See e.g., United
     Community Church of Garcin (1991) 231 Cal.App.3d 327, 337 [a court may refuse to consider evidence
27   absent from the separate statement because it does not exist].  Several of the facts are not accurate, and
     the Court should not consider this section for any substantive purpose, recognizing that it is merely
28   argument.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1                                    5                    Case No. 14-03142-CL11
                                                                 Adv. Proceeding No. 14-90152-CL
                                                                 Memorandum

1    moving forward to repay their obligations as required by the Bankruptcy Code, and
2    moving on with their lives. (*Id.*)

3                                                      **III.**

4                             **THE STANDARD FOR SUMMARY JUDGMENT**

5            Summary judgment is appropriate where the movant shows that there is no

6    genuine dispute of material fact and the movant is entitled to judgment as a matter of

7    law. Fed. R. Civ. P. 56(a) (applicable in adversary proceedings under Rule 7056). "The

8    bankruptcy court must view the evidence in the light most favorable to the non-moving

9    party when determining whether genuine disputes of material fact exist and whether the

10   movant is entitled to judgment as a matter of law." *Plyam v. Precision Dev., LLC (In re*

11   *Plyam)* 530 B.R. 456, 462 (Bankr. 9th Cir. 2015). "And, it must draw all justifiable

12   inferences in favor of the non-moving party. *Ibid.*

13                                                      **IV.**

14                               **SUMMARY OF ARGUMENT**

15           Elite argues, and Debtors agree, that the Judgment is entitled to preclusive effect

16   in this court. In California, application of issue preclusion requires that: (1) the issue

17   sought to be precluded from relitigation is identical to that decided in a former

18   proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue

19   was necessarily decided in the former proceeding; (4) the decision in the former

20   proceeding is final and on the merits; and (5) the party against whom preclusion is

21   sought was the same as, or in privity with, the party to the former proceeding. *In re*

22   *Plyam,* 530 B.R. at 462, citing *Lucido v. Super. Ct.* (1990) 51 Cal.3d 335, 341.

23           Here, the jury was instructed pursuant to California law on the conduct and

24   scienter requirements of five specific causes of action. The jury made findings as to the

25   conduct comprising those causes of action. The jury was then required to specifically

26   determine the damages caused by conduct that met the requisite intent for

27   nondischargeability, and the damages caused by conduct which did not. Accordingly,

28   the judgment, entered in accordance with the jury's special verdict, may be given

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1                                          6                              Case No. 14-03142-CL11
                                                                        Adv. Proceeding No. 14-90152-CL
                                                                                          Memorandum

1  preclusive effect as to the dischargeability of the damages.

2      The narrow exception to discharge under 11 U.S.C. section 523(a)(6) for "willful

3  and malicious injury" does not apply to debt arising from recklessly or negligently inflicted

4  injuries.  Because the jury in the State Court Action allocated the majority of damages to

5  *unintentional* torts – i.e., for alleged recklessly or negligently inflicted injuries – that

6  portion of the debt does not fall within the ambit of section 523(a)(6).

7      Accordingly, this Court should enter judgment that the damages for claims that

8  meet the specific intent requirement of *Geiger* are non-dischargeable, and that the

9  damages for claims that do not meet the intent requirement are dischargeable.

10                                     **V.**

11                                **ARGUMENT**

12  **A.  Debts arising from recklessly or negligently inflicted injuries are not
    exempt from discharge under 11 U.S.C. § 523(a)(6).**

13

14      The Bankruptcy Code "is designed to provide a 'fresh start' to the discharged

15  debtor." *Hawkins v. Franchise Tax Board*, 769 F.3d 662, 666 (9th Cir. 2014). To that

16  end, "exceptions to dischargeability should be *strictly construed* in order to preserve the

17  Bankruptcy Act's purpose of giving debtors a fresh start." *Jackson v. California
    Franchise Tax Board*, 184 F.3d 1046, 1051 (9th Cir. 1999) (citations omitted) (emphasis

18  added).

19

20      Setting forth an exception to dischargeability, section 523(a)(6) of the Bankruptcy

21  Code provides that an individual debtor may not discharge a debt "for willful *and*

22  malicious injury by the debtor to another entity or to the property of another entity."

    *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008), citing 11

23  U.S.C. § 523(a)(6), emphasis added.

24      In Sections III(B) and III(C) of its memorandum, Elite contends the elements of

25  section 523(a)(6) were necessarily determined as to all causes of action in the State

26  Court Action. [Doc. No. 26-1, p. 12.] The United States Supreme Court's controlling

27  opinion in *Geiger* appearing *nowhere* in its analysis, Elite contends in its motion that it

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO
4976420.1                    7                    Case No. 14-03142-CL11
                                                 Adv. Proceeding No. 14-90152-CL
                                                 Memorandum

1    need only show "(1) that the debtor acted intentionally; (2) that such action produced
2    harm; and (3) that the act was without just cause or excuse." [Doc. No. 26-1, p. 10: 15-
3    19.] For this proposition, Elite cites *Impulsoria del Territorio Sur S.A. v. Cecchini (In re*
4    *Cecchini)*, 780 F.2d 1440 (9th Cir. 1986), *In re Britton*, 950 F.2d 602, 605 (9th Cir. 1991)
5    (relying on *In re Cecchini)*, and *In re Manser*, 99 B.R. 434, 435 (9th Cir. BAP 1986)
6    (relying on *In re Cecchini).*

7         Pre-dating *Geiger, Cecchini* held that for purposes of § 523(a)(6), "willful and
8    malicious" means a wrongful act (such as conversion) done intentionally, but that the
9    creditor need not show that the debtor had the specific intent to injure. *Id.* at 1443. But
10   *Cecchini* was effectively overruled by *Geiger*, which, as explained above, establishes
11   that nondischargeability under section 523(a)(6) requires a showing of *intentional injury*.
12   Both *In re Britton* and *In re Manser* followed *Cecchini*, and therefore none can be
13   regarded as current authority on the willful and malicious elements of section 523(a)(6).

14        Based upon this incorrect standard, Elite offers the proposition that "[i]n the State
15   Court Action, the jury found against Debtors (1) that the debtor acted intentionally; (2)
16   that such action produced harm; and (3) that the act was without just cause." [Doc. No.
17   26-1, p. 10.] This is conclusory, incorrect, and plainly insufficient under *Geiger*. Elite's
18   motion should be denied on those grounds alone.

19        In *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998), the U.S. Supreme Court
20   considered whether conduct that was negligent or reckless, rather than intentional, fell
21   within the narrow exception to discharge under Bankruptcy Code section 523(a)(6). It
22   aptly reasoned that "[t]he word willful in (a)(6) modifies the word 'injury,' indicating that
23   nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or
24   intention *act* that leads to injury." *Id.,* at 61 (emphasis in original). The Court noted the
25   Court of Appeals' observation that the "(a)(6) formulation triggers in the lawyer's mind
26   the category 'intentional torts,' as distinguished from negligent or reckless torts.
27   Intentional torts generally require that the actor intend 'the *consequences* of an act,' not
28   simply "the act itself." *Id.,* at 61-62. The Supreme Court ultimately held that "debts

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1

8

Case No. 14-03142-CL11
Adv. Proceeding No. 14-90152-CL
Memorandum

1    arising from recklessly or negligently inflicted injuries do not fall within the compass of

2    §523(a)(6)." *Id.* at 64.

3        Furthermore, Elite bears the burden of proving its debt is excepted from discharge

4    under § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279,

5    284 (1991). In addition to proof of intentional injury, Elite must also establish both

6    malicious injury *and* willful injury. *See In re Barboza*, 545 F.3d at 706 ["the malicious

7    injury requirement is separate from the willful injury requirement"], citing *Carrillo v. Su (In*

8    *re Su),* 290 F.3d 1140, 1146-47 (9th Cir. 2002) (conflating the two requirements is

9    grounds for reversal); *see also Jett v. Sicroff (In re Sicroff),* 401 F.3d 1101, 1105 (9th Cir.

10   2005) ("We analyze the willful and malicious prongs of the dischargeability test

11   separately."); *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 463 (Bankr.9th

12   Cir. 2015) (the malicious injury requirement and the willful injury requirement are

13   conjunctive and require separate analysis).

14   **B.    Because the jury allocated damages between the unintentional claims and**
         **the intentional claims, the portion allocated to the unintentional claims is**
15       **dischargeable under *Geiger***

16       In the State Court Action, Elite asserted four causes of action against Chris

17   Hamilton relevant here: (1) breach of fiduciary duty, (2) breach of duty of loyalty, (3)

18   intentional interference with prospective economic advantage, and (4) trade secret

19   misappropriation.

20       **1.    Under California law, breach of fiduciary duty and breach of the duty**
             **of loyalty are unintentional torts.**
21

22       In California, breach of fiduciary duty and breach of the duty of loyalty are

23   unintentional torts. The elements for breach of fiduciary duty are the existence of a

     fiduciary relationship, breach of that fiduciary duty, and damages. *Oasis W. Realty, LLC*
24
     *v. Goldman* (2011) 51 Cal.4th 811, 820. "There is no particular scienter requirement, let
25
     alone a requirement of a subjective intent to injure." *Plyam v. Precision Dev., LLC (In re*
26
     *Plyam)* 530 B.R. 456, 470-471 (Bankr.9th Cir. 2015). California courts similarly refer to
27
     breach of fiduciary duty as an unintentional tort. *See e.g., Lackner v. North* (2006) 135
28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1                                        9                          Case No. 14-03142-CL11
                                                                      Adv. Proceeding No. 14-90152-CL
                                                                                       Memorandum

1    Cal.App.4th 1188, 1212 [using breach of fiduciary duty as an example of an

2    unintentional tort, including in a string citation *"American Airlines, Inc. v. Sheppard*

3    *Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017 [breach of fiduciary duty . . .]."].

4         The elements of a cause of action for breach of the duty of loyalty are virtually

5    identical to those for breach of fiduciary duty: (1) the existence of a relationship giving

6    rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage

7    proximately caused by that breach. *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400,

8    410; *see also Fields v. QSP, Inc.*, case no. CV 10-5772 CAS (SSx), 2011 U.S. Dist.

9    LEXIS 41350, at *10 (C.D. Cal. Apr. 8, 2011)(citing *Huong Que*).

10         Breaches of fiduciary duty and of the duty of loyalty are generally, and were

11   presented in this case, unintentional torts.  As such, the jury's allocation of damages for

12   Debtors' breach of fiduciary duty or breach of the duty of loyalty does not rise to the level

13   of "willful and malicious injury" under section 523(a)(6).  *See e.g., Bass v. Beacon Talent*

14   *Agency, Inc. (In re Bass)*, case no. CV 13-07707-JVS, 2014 U.S. Dist. LEXIS 100708,

15   *10-11 (C.D. Cal. July 22, 2014) [the two prongs of §523(a)(6) not met by finding of

16   liability for breach of fiduciary duty]; *In re Plyam, supra,* 530 B.R. at 470-471 ["without

17   more, a judgment for breach of fiduciary duty under California law cannot support a

18   willfulness determination under § 523(a)(6)."]  These two causes of action necessarily

19   give rise to dischargeable debt.  *See Geiger, supra,* at 61, 64; *see also Shahverdi v.*

20   *William Hablinski Architecture (In re Shahverdi)*, BAP No. CC-12-1287-MkTaPa, 2013

21   Bankr. LEXIS 4195, at *1, 42 (B.A.P. 9th Cir. June 7, 2013) [debt arising from

22   unintentional torts for trespass to chattels and negligent misrepresentation was

23   dischargeable].

24         The Special Verdict form in this case confirms that the jury's findings included NO

25   finding as to intent with regard damages caused by the breach of fiduciary duty claim:

26         Question 1: Was Christopher Hamilton in a fiduciary relationship with San
         Diego Testing Services?    Yes X  No _
27

28       Question 2: Did Christopher Hamilton's conduct in connection with the
         formation of Summa constitute a breach of fiduciary duty to San Diego

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1                                    10                    Case No. 14-03142-CL11
                                                                  Adv. Proceeding No. 14-90152-CL
                                                                  Memorandum

1   Testing Services?   Yes X No _

2   Question 3: Did Christopher Hamilton's breach of fiduciary duty cause
    harm to San Diego Testing Services?   Yes X No _

3

4   (RJN, Exh. 2, Special Verdict Form at p. 2.)

5       The jury made no finding of intentional injury with respect to the claims for breach

    of fiduciary duty.  The findings with respect to the breach of duty of loyalty similarly make

6   no finding with respect to intentional injury.  Accordingly, Elite's request to enter a

7   judgment of nondischargeability as to these claims must be denied.

8
        **2.      The punitive damages award cannot form the basis for a finding of**
9            **nondischargeability as to unintentional torts.**

10      "Elite asserts that the jury's punitive award meets the maliciousness element

11  under 11 U.S.C. § 523(a)(6) that bootstraps all causes of action" and concludes that

12  "[t]he resulting damages are therefore non-dischargeable . . ." [Doc. No. 26-1, p. 14: 15-

13  17; p. 16: 7-9.]  The argument fails for both legal and factual reasons.  First, Elite fails to

14  address the "willful" prong of the relevant 9th Circuit authority.  Second, the punitive

15  damage finding in this case does not disclose which conduct or claim it is based upon,

16  and so cannot form the basis for claim preclusion. Third, the California stature allows

17  awards of punitive damages for disjunctive reasons- many of which do not meet the

18  requirements of section 523(a)(6).

19              **a.      The finding fails to establish willful injury.**

20      First, the exception to discharge under section 523(a)(6) requires that the moving

21  party show *both* malicious injury *and* willful injury.  *In re Plyam*, 530 B.R. at 463 [the

22  malicious injury requirement and the willful injury requirement are conjunctive and

23  require separate analysis].  Elite seems to argue that the punitive damages award

24  satisfies *only* the "maliciousness element" -- meaning that even if such was true (which it

25  is not, as Debtors discuss below), the award would still be *insufficient* as a pure matter of

26  law to establish that *any* amount (whether the punitive damages themselves or the entire

27  judgment) falls within the ambit of section 523(a)(6), because Elite fails to proffer how, if

28  at all, the award establishes second prong of willful injury.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1                                    11                          Case No. 14-03142-CL11
                                                                   Adv. Proceeding No. 14-90152-CL
                                                                                  Memorandum

### b. The finding fails to identify the conduct or damages upon which it was based.

Second, Elite argues that "the requisite finding of malice was necessarily made by the jury as to all causes of action, including but not limited to the breach of fiduciary duty and breach of [duty of] loyalty." [Doc. No. 26-1, p. 15-16.] This is a non-sequitur. Specifically, the question regarding punitive damages asks:

> Question 138: If you answered yes to Questions 3, 13, 40, 69, or 105. Do you find by clear and convincing evidence that Christopher Hamilton acted with malice, oppression, or fraud?"

(SS 44, emphasis added). Questions 3, 13, 40, 69, and 105 were the operative questions regarding the whether damages were caused by both intentional claims and unintentional claims: Question 3: Fiduciary Duty (Damages found); Question 13: Loyalty (Damages found); Question 40: Prospective Economic Advantage (Damages found); Question 69: Trade Secrets (Damages found), and Question 105: Section 502 (No liability or damages found).

In other words, the answer "yes" to Question 138 is necessarily ambiguous. The Court can only infer that the jury found that Hamilton acted with the required malice, oppression, or fraud with respect to one of the claims, but cannot determine which claim (or claims). Presumably, such a finding would be consistent with one of the claims with an intentional injury requirement. However, the Court cannot conclude from the Special Verdict or the Judgment that Hamilton acted with malice, oppression, or fraud with respect to any particular claim, and certainly not with respect to the unintentional tort claims.

As such, it cannot form the basis for a finding that the debt arising from any particular claims is in fact nondischargeable. See In re Shahverdi, 2013 Bankr. LEXIS 4195, at *1, 42 [debt arising from unintentional torts for trespass to chattels and negligent misrepresentation was dischargeable].

///

///

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1

12

Case No. 14-03142-CL11
Adv. Proceeding No. 14-90152-CL
Memorandum

1

**c.    A finding for punitive damages by itself cannot establish malice
under 523(a)(6), because the California test is disjunctive.**

2

3

Finally, Elite argues that "a showing of malice in fact or actual malice is required

4

to obtain punitive damages under California law." [Doc. No. 26-1, p. 14: 17-20.] While a

finding of malice will support a claim for punitive damages, it is not the only finding that

5

will sustain such an award. Here, the jury here was instructed that in considering the

6

punitive damages claim, malice, oppression, despicable or reckless, _or_ fraud conduct

7

could justify a punitive damages award. (SS 43.)

8

The BAP in a 2015 opinion summarized the application of the elements of punitive

9

damages award under California Civil Code section 3294 in the context of

10

nondischargeability under Bankruptcy Code section 523(a). _In re Plyam_, 530 B.R. at

11

470. There, the jury's punitive damages award was based on a disjunctive finding of

12

malice, oppression, or fraud. The BAP first noted that by comparing the two forms of

13

malice – malice in law and malice in fact – and concluded that "under California law, the

14

general definition of malice in fact encompasses less reprehensible states of mind" such

15

as those _not_ included within _Geiger's_ narrow construction of willfulness in the context of

16

section 523(a)(6). _In re Plyam_, 530 B.R. at 464. Second, it reiterated that under _Geiger,_

17

"recklessly inflicted injuries do not satisfy the section 523(a)(6) willfulness requirement."

18

_Id._ It observed that "malice and oppression, which arise from acts in conscious

19

disregard of another's rights or safety, fail to satisfy the requisite state of mind for §

20

523(a)(6) willfulness." _Id._ at 465. It further concluded that because "conscious disregard

21

is the equivalent of reckless conduct;" the latter being where the person need not intend

22

the resulting harm, a finding of conscious disregard is _insufficient_ to satisfy the section

23

523(a)(6) willfulness requirement. _Id._ at 469. Finally, it held that "a punitive damages

24

award based on Despicable Malice or oppression does _not_ establish the subjective

25

intent required for § 523(a)(6) willfulness." _In re Plyam_, 530 B.R. at 470, emphasis

26

added.

27

///

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1

13

Case No. 14-03142-CL11
Adv. Proceeding No. 14-90152-CL
Memorandum

1    Here, the special verdict form establishes that the request for punitive damages
2    was stated in the disjunctive: the jury could award punitive damages if it found Chris
3    Hamilton acted with malice, oppression, *or* fraud. (SS 44.) As such, the punitive
4    damages award cannot be preclusive as to a finding of malice under section 513(a)(6).
5    *See e.g., id.* at 470; *see also Landmark Home Mortg., Inc. v. Gonzales (In re Gonzales)*,
6    Case No. 12-47945 MEH, 2014 Bankr. LEXIS 1394, *10 (Bankr. N.D. Cal. Apr. 3, 2014)
7    ["If any of the alternate grounds for exemplary damages will not establish willfulness,
8    then an award pursuant to § 3294 does not establish nondischargeability pursuant to §
9    523(a)(6)."]

10    Elite *again* relies on obsolete precedent, all pre-dating *Geiger.* It cites three cases
11    which appear to be inconsistent with current Ninth Circuit analysis of "willful and
12    malicious." *In re Krishnamurthy*, 209 B.R. 714 , 721 (9th Cir.B.A.P.1997) concluded that
13    punitive damages awarded under California law necessarily established that a jury found
14    oppression, fraud or malice, satisfying the § 523(a)(6) standard. But *Krishnamurthy* was
15    decided prior to *Geiger* and prior to the *Su* and *Jercich* two-pronged test for § 523(a)(6).
16    As a result, it did not address the subjective test for willfulness and is not controlling
17    precedent. *See Brandstetter v. Derebery (In re Derebery)*, 324 B.R. 349, 357
18    (Bankr.C.D.Cal. 2005) [*Krishnamurthy* is not viable precedent]. *In re Giangrasso*, 145
19    B.R. 319, 323 (9th Cir. B.A.P. 1009) (cited by *Krishnamurthy*) and *In re Aubrey*, 111 B.R.
20    268, 275 (9th Cir. B.A.P. 1990) similarly are not viable precedent because they were
21    decided pre-*Geiger* and do not control in light of current Ninth Circuit authority.

22    Again, Debtors do not dispute the punitive damages claim *itself* in the amount of
23    $50,000 is nondischargeable. But the contention that it somehow affects every claim
24    rendering the *unintentional* torts premised upon negligence is entirely without merit. At a
25    minimum, there is a triable issue of fact as to whether the punitive damages award
26    establishes nondischargeability under section 523(a)(6). Elite's motion must be denied.
27    ///
28    ///

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1

14

Case No. 14-03142-CL11
Adv. Proceeding No. 14-90152-CL
Memorandum

1

2

**3.    Because the jury considered all of the damages and allocated a certain amount of damage arising from the unintentional torts, that debt is dischargeable under *Geiger*.**

3      Because the jury necessarily considered conduct involving intentional injury (i.e.,

4  intentional interference with prospective economic advantage), and allocated the

5  damages for the conduct involving intentional injury accordingly, while allocating different

6  damages to unintentional claims, the Court may enter judgment consistent with that

7  verdict: specifically, that the damages arising from the claims for breach of fiduciary duty

8  and the duty of loyalty are dischargeable.

9      The BAP's decision in *In re Shahverdi,* is instructive.  There, thirteen causes of

10  action were at issue in arbitration proceedings, including both intentional and

11  unintentional torts such as fraud, conversion, trespass to chattels, and negligent

12  misrepresentation.  The arbitrator awarded $100,000 in punitive damages for fraud and

13  conversion, and $800,000 in other damages which were not allocated to any particular

14  claim.  *Id.* at 29.  The bankruptcy court found the arbitrator's award had preclusive effect

15  and thus, that the entire award was nondischargeable.

16      The BAP held that this was reversible error.  It observed that the remaining

17  damages for $800,000 *could* have been allocated to negligent causes of action that do

18  not require a particular *mens rea*, such as conversion, and that "there were at least two

19  causes of action . . . that are dischargeable: trespass to chattels, and negligent

20  misrepresentation."  *Id.* at 42.  In other words, "$800,000 of the damages the bankruptcy

21  court found nondischargeable still remain[ed] without any identifiable allocation to

22  specific factual issues giving rise to nondischargeability."  *Id.* at 39.  The BAP therefore

23  remanded the matter with instructions that the bankruptcy court determine the proper

24  allocation of the arbitral award between nondischargeable and dischargeable claims.  *Id.*

25  at 45.

26      Here, in contrast, the excruciatingly detailed special verdict form asked the jury to

27  determine the amount of damage (i.e., injury) caused by *each* specific type of conduct –

28  i.e., breach of fiduciary duty, breach of duty of loyalty, etc., and to allocate damages

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1

15

Case No. 14-03142-CL11
Adv. Proceeding No. 14-90152-CL
Memorandum

1   accordingly. [SS 22-29.] With respect to the unintentional claims, the jury found that the

2   total amount of damage to Elite caused by Chris's "breach of fiduciary duty" was

3   $1,010,000, and the total damage to Elite caused by the "breach of duty of loyalty" was

4   $510,000. [SS 22-23.] It found that Elizabeth was liable, jointly and severally as to both

5   entities, in a slightly varied amount. [SS 26-27.] The damages allocated to these claims

6   are therefore dischargeable.

7   **C.    The intentional claims are either nondischargeable, or require trial as to intent.**

8

9   **1.    Debtors do not dispute that the debt arising from intentional interference with prospective economic advantage is nondischargeable.**

10

11   The jury found that the total damage to Elite caused by Chris's intentional

12   interference with prospective economic advantage was $150,000. The verdict included

13   the following finding:

14   Question 38: Did Christopher Hamilton engage in wrongful conduct with the intent to disrupt the relationship? Yes $\underline{X}$ No ___.

15   In stark contrast to the findings on breach of fiduciary duty and duty of loyalty, the jury

16   verdict clearly finds the intent sufficient to render the damages non-dischargeable.

17

18   **2.    The claims for misappropriation of trade secrets lack any finding regarding intent and thus issue preclusion is improper.**

19   The jury found that the total damage to Elite for Chris's misappropriation of trade

20   secrets was $350,000. In *Miller v. J.D. Abrams Inc. (In re Miller)* 156 F.3d 598, 604 (5th

21   Cir. 1998), the Fifth Circuit considered whether debt arising from misappropriation of

22   trade secrets was nondischargeable under *Geiger*. It reasoned that *Geiger* did not

23   equate section 523(a)(6) torts and intentional torts, and thus, "[m]erely because a tort is

24   classified as intentional does not mean that any injury caused by the tortfeasor is willful."

25   *Id.* at 604.

26   Accordingly, a finding of liability for misappropriation of trade secrets was alone

27   insufficient to exempt from discharge the debt arising therefrom. *Id.* The Fifth Circuit

28   ultimately held that because the jury in the state court case did not make a finding of

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1                                    16                    Case No. 14-03142-CL11
                                                                  Adv. Proceeding No. 14-90152-CL
                                                                  Memorandum

1   requisite intent, issue preclusion of the state court judgment was unavailable. *Id.* at 606.

2   See also *Arden v. Silas (In re Arden)*, BAP Nos. CC-14-1186-DTaKu, 2015 Bankr.

3   LEXIS 2199, *27-28 (B.A.P. 9th Cir. July 2, 2015) ["'[m]erely because a tort is classified

4   as intentional does not mean that any injury caused by the tortfeasor is willful.'"], citing

5   *Ditto v. McCurdy*, 510 F.3d 1070, 1078 (9th Cir. 2007), citing *In re Miller*, *supra*.

6       Here, Elite has not met its burden of proving the jury found Chris acted with the

7   requisite intent. Accordingly, Debtors submit that additional evidence will be required to

8   determine whether the damages for misappropriation of trade secrets can be determined

9   to be nondischargeable.

10   **3.    The aiding and abetting liability allocated to the unintentional torts is
         dischargeable.**

11

12   Elite contends the aiding and abetting verdicts are nondischargeable. As a

13   preliminary matter, this is moot, as the judgment against Chris and Elizabeth was joint

14   and several, meaning that Elizabeth's aiding and abetting liability is subsumed by the

15   judgment against Chris. For the same reasons set forth above, because the debt arising

16   from breach of fiduciary duty and breach of duty of loyalty is dischargeable, so too is the

17   aiding and abetting liability associated with those underlying causes of action.

18       Further, the findings necessary for aiding and abetting liability are distinct from the

19   requirements for nondischargeability pursuant to § 523(a)(6). (CACI 2-3600.) Thus,

20   issue preclusion does not apply as the issues were not identical or necessarily decided

21   in the State Court Action. *See e.g., In re Gonzales*, 2014 Bankr. LEXIS 1394, *11-12

22   [aiding and abetting liability insufficient for nondischargeability under section 523(a)(2).]

23   **4.    Attorneys' fees and costs attributed to the unintentional torts are
         dischargeable.**

24       For the reasons set forth above, the attorneys' fees and costs attributed to the

25   breach of fiduciary duty and breach of duty of loyalty claims are dischargeable.

26   ///

27   ///

28   ///

Higgs Fletcher &
Mack LLP
Attorneys At Law
San Diego

4976420.1                    17                    Case No. 14-03142-CL11
                                                   Adv. Proceeding No. 14-90152-CL
                                                   Memorandum

1

## V.

2

## CONCLUSION

3    Exceptions to discharge are strictly construed in order to effectuate the purpose of

4    the Bankruptcy Code of providing debtors with a fresh start.  Here, the jury allocated

5    damages between the unintentional conduct (breach of fiduciary duty and breach of duty

6    of loyalty) and the intentional conduct, putting a value on Elite's injury resulting from

7    each.  As such, the state court judgment may be given preclusive effect to the extent that

8    the jury necessarily determined that Debtors' conduct associated with the unintentional

9    torts did not rise to the requisite level of "willfulness" or "malice" to establish an exception

10    to discharge under § 523(a)(6).  Thus, Elite's debt for unintentional claims is

11    dischargeable as a matter of law, and Debtors are entitled to summary judgment.

12    Debtors do not dispute for purposes of this motion that the debt arising from the sole

13    intentional tort of intentional interference with economic advantage, where findings

14    sufficient to satisfy the requirements of section 523(a)(6) and *Geiger* have been made, is

15    nondischargeable. Finally, the findings regarding misappropriation of trade secrets lack

16    the requisite intent determination, and issue preclusion is improper.

17    In contrast, Elite's motion for summary judgment should be denied.  Elite has not

18    (and cannot) meet its burden of proving that the entire judgment may be given preclusive

19    effect, such that the entire damages award is nondischargeable.

20    Debtors respectfully request as follows:

21    1.    That the Court grant Debtors' Motion for Summary Judgment in its entirety,

22    and enter judgment in favor of Debtors;

23    2.    That the Court deny Elite's Motion for Summary Judgment to the extent it

24    seeks to declare the entire state court judgment nondischargeable; and specifically, the

25    debt arising from the claims for breach of fiduciary duty, breach of duty of loyalty, and

26    misappropriation of trade secrets;

27    ///

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1

18

Case No. 14-03142-CL11
Adv. Proceeding No. 14-90152-CL
Memorandum

3.      The Court enter an order declaring any damages arising from the breach of fiduciary duty and breach of duty of loyalty claims dischargeable, as well as any associated attorneys' fees and costs.

DATED:   August 25, 2015                          HIGGS FLETCHER & MACK LLP


By: /s/ Paul J. Leeds
    PAUL J. LEEDS, ESQ.
    MAGGIE E. SCHROEDTER, ESQ.
    Attorneys for Debtors
    CHRISTOPHER J. HAMILTON and
    ELIZABETH TESOLIN HAMILTON

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4976420.1                                   19                    Case No. 14-03142-CL11
                                                                Adv. Proceeding No. 14-90152-CL
                                                                              Memorandum